UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
Aug 29, 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America<br>v.<br><br>EDGAR ENRIQUE GARCIA LOPEZ<br><br>*Defendant(s)* | Case No. 2:23-mj-0124 CKD |

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  August 29, 2023  in the county of  Yuba  in the  Eastern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Brian Nehring, DEA Special Agent
*Printed name and title*

Sworn to me and signed via telephone.

Date: August 29, 2023

*Judge's signature*

City and state: Sacramento, CA

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Brian Nehring of the DEA, being duly sworn, depose and state as follows:

1. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division, and have been so employed since 1991. I have had numerous assignments since beginning with DEA, including being assigned to the San Francisco Division Office between 1991 and 1994, the Alameda County Narcotics Task Force between 1995 and 1996, the San Francisco Division Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004. I have been assigned to the Sacramento Division Office since September of 2004.

2. This Affidavit is submitted in support of a Criminal Complaint charging **Edgar Enrique Garcia LOPEZ** with possession with intent to distribute a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. 841(a)(1).

## PROBABLE CAUSE

3. The United States government, including the DEA, is investigating Edgar Enrique Garcia LOPEZ and others regarding violations of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute and Distribution of Fentanyl and Methamphetamine).

4. During 2020 and 2021, I spoke to an individual hereinafter referred to as the Confidential Source (CS). It should be noted that the CS has a criminal history including felony convictions for drug offenses. I am not aware of the CS providing false or misleading information in this investigation. The CS's information has been utilized in multiple prior state and federal affidavits authorized by the court which led to the seizure of drugs, federal and state arrests and successful prosecutions. I have verified the CS's information in the past and it has been further corroborated through the statements of individuals arrested in ongoing federal investigations. The CS is currently providing information in the hope of receiving consideration with regard to a non-violent, non-fraud related pending federal charge. The CS has not been promised anything other than this: the CS's assistance will be made know to the

appropriate prosecutor, which it has.  For the above reasons, I believe the CS is reliable in this investigation.

5. The CS identified Edgar Enrique Garcia LOPEZ as a large methamphetamine and fentanyl pill trafficker living in the Marysville, California area.  The CS related that LOPEZ had sold the CS multiple pounds of methamphetamine in the past and had recently represented himself as an individual capable of supplying multiple 100-count quantities of fentanyl tablets.

6. Inquiries with the NCIC criminal history database revealed that LOPEZ has an extensive criminal record including but not limited to, separate misdemeanor convictions for assault with a deadly weapon, driving on a suspended license, driving under the influence, providing false identification to law enforcement officers, and a felony conviction for Spousal Abuse in 2013 in Yuba County, California, for which he was sentenced to 208 days in jail and 36 months of probation, and a felony conviction in 2020 in Yuba County, California.

7. In April 2020, the CS called LOPEZ and arranged for the purchase of an initial one hundred fentanyl tablets to take place on April 3, 2020 in the parking lot of an O'Reilly Auto Parts store in Marysville, California.  I monitored and recorded this telephone call.  After the call, I accompanied the CS to this location and subsequently met with LOPEZ, who arrived in a vehicle registered in his own name per California Department of Motor Vehicles (DMV) inquiries.  LOPEZ walked over to my vehicle where the CS and I were sitting, and the CS introduced me.  LOPEZ then produced a bottle containing approximately one hundred blue tablets bearing an "M" imprint on one side and "30" on the other (55 gross grams (gg)).  I noted that the pills were blue in color with the same markings as the trademarked 30 mg Oxycodone tablet manufactured by Mallinckrodt Pharmaceuticals, which was the most popular counterfeit tablets manufactured by clandestine producers and distributors at the time.  I have repeatedly encountered these types of pills and have regularly determined they contained fentanyl or its analogues after laboratory analysis.  I provided LOPEZ with $1,200 cash for these pills and told him I would want more in the future.

8. During April 2020, I again monitored and recorded the CS speaking to LOPEZ on the telephone.  During these calls, the CS related to LOPEZ that I wanted several hundred more pills.  LOPEZ agreed to deliver them to the Home Depot parking lot in Sacramento off of Truxel Road.  I drove the CS to this location and observed LOPEZ subsequently arrive in another vehicle (later determined to be registered in his name via DMV inquiries) that he parked next to my vehicle.  LOPEZ produced several pill bottles with various amounts of pills and I agreed to purchase three hundred of these tablets (118 gg), which were the same blue M30 type tablets consistent with

counterfeit Oxycodone tablets containing fentanyl, in exchange for $3,900 cash. After I exchanged cash for the pills, LOPEZ showed me approximately two pounds of crystal methamphetamine he had in his vehicle and he provided me with a free sample of this methamphetamine to gauge the quality.

9. During January 2021, I monitored and recorded the CS telephonically speaking with LOPEZ. During this call, the CS told LOPEZ that I wished to purchase methamphetamine. The CS arranged to meet with LOPEZ at the same O'Reilly Auto Parts store parking lot in Marysville on January 22, 2021. On January 22, 2021, I drove the CS to this location. Agents conducting surveillance observed LOPEZ and his wife, Yesenia LOPEZ, depart their residence at 1947 Country Club Court, Unit 4, Marysville, California and observed LOPEZ carry a bag out to his green truck and put it in the storage toolbox in the bed of the truck before they departed in the vehicle and travelled directly to the O'Reilly Auto Parts store lot. I observed LOPEZ arrive at the O'Reilly Auto Parts lot, get out of the truck, and remove the same bag from the storage box in the bed of the truck. LOPEZ then gave the bag to me and I saw that it contained approximately one pound (516 grams) of suspected methamphetamine, and I paid him $2,500 cash. I told LOPEZ that if this methamphetamine was of good quality I would purchase more in the future.

10. During March 2021, I telephonically contacted LOPEZ and arranged to purchase two pounds of methamphetamine from him on March 3, 2021. LOPEZ told me that he was running a painting crew at an assisted living facility in South Sacramento that day and requested to meet in the parking lot. LOPEZ thereafter sent me directions to this location via text message. I travelled to this location and met with LOPEZ, who I observed remove the drugs from a commercial storage container in the parking lot which also contained the painting equipment and supplies for his painting business. LOPEZ gave me 984 gg of suspected methamphetamine in exchange for $4,900 cash.

11. I did not have contact with LOPEZ again until January 2022, at which time I again called him and told him I had returned to the area and wished to see him. I arranged to purchase a pound of methamphetamine from him, and he agreed to deliver on January 25, 2022 at the same O'Reilly Auto Parts lot. LOPEZ also stated he had fentanyl tablets still available. On January 25, 2022, I traveled to this location and observed LOPEZ arrive in another vehicle later determined to be registered in his name. During this meet, LOPEZ gave me approximately one pound (516 gg) of suspected methamphetamine in exchange for $2,000 cash. I told LOPEZ I wanted another pound of methamphetamine immediately and also that I needed samples of the current fentanyl tablets to show prospective customers. LOPEZ told me he would be right back, and then left the parking lot. Agents followed him directly to his residence at 1947 Country Club Court, Unit #4, Marysville, California, which he

3

entered briefly before agents observed him exiting with a gray shopping bag. LOPEZ drove directly back to the O'Reilly Auto Parts lot and he gave me the same gray shopping bag which contained the additional suspected pound of methamphetamine (516 gg) for another $2,000 cash. LOPEZ also gave me a bottle containing multiple blue M30 tablets as samples, which he claimed were of exceptional quality.

12. During subsequent recorded calls to LOPEZ, I arranged to meet LOPEZ on March 3, 2022 to purchase 2 pounds of methamphetamine. Prior to this date, the Honorable Carolyn K. Delaney authorized a GPS phone locator search warrant for LOPEZ's telephone (530-713-9831). The phone locator information from AT&T for this telephone showed it primarily located in close proximity to 1947 Country Club Court, Marysville, California, LOPEZ's identified residence, during the evening hours in February 2022. The telephone locator information also showed it primarily at a new construction home development in Plumas Lake, California most days which I believe coincided with LOPEZ informing me that he was running an electrical crew wiring new houses. On March 3, 2022, LOPEZ told me during recorded calls that he was at work but would obtain the methamphetamine and he requested to meet at a Rite Aid in Olivehurst, California. The GPS phone locator information for the telephone showed LOPEZ's telephone at that time in Plumas Lake at the new home development but after this call the telephone traveled back to Marysville, specifically to LOPEZ's residence at 1947 Country Club Court, which coincided with agents observing LOPEZ arrive in a silver Ford Truck and then entering Apartment 4 briefly before exiting with a Walmart shopping bag. LOPEZ was observed taking the bag to a black Chevrolet Suburban which he departed in and drove directly to the Rite Aid where he met me and sold me 1,008 gg of suspected methamphetamine (contained in the shopping bag) for $4,000. I told LOPEZ that I had $900 left and asked if he would give me an additional half-pound of methamphetamine, which he agreed to. Agents subsequently followed LOPEZ directly back to his residence where he was observed entering before leaving again with a similar bag and driving directly back to the Rite Aid where he provided me with 285 gg of suspected methamphetamine. LOPEZ told me he could also supply fentanyl tablets and that he would drop the price significantly if I purchased five or more pounds of methamphetamine at a time.

13. I noted through a review of the tolls for 530-713-9831 in the three months following this transaction that the highest frequently contacted number by 530-713-9831 was 530-923-6552, another AT&T number. Subsequent inquiries with CLEAR Thomas and Reuters revealed that this number was listed as belonging to Edgar Garcia LOPEZ with a listed address of 1947 Country Club Court, #4, Marysville, California. I also noted during this time period that tolls for 530-713-9831 appeared to show it cease making outgoing calls in approximately late May 2022 and although service

was still active there were no outgoing or incoming answered calls and the telephone appeared not to have been powered on since early June of 2022.

14. I subsequently contacted LOPEZ on 530-923-6552 (Target Cell Phone) on July 17, 2022. I told LOPEZ that the original CS had obtained his current number from a mutual acquaintance. LOPEZ told me that he was no longer using the other telephone and to contact him at this number in the future. I told LOPEZ that I wanted to see him soon to obtain additional pounds of methamphetamine and he told me he had plenty and to call him a couple days ahead of time before I was ready to meet him.

15. I subsequently made numerous recorded calls to LOPEZ on the Target Cell Phone arranging to meet LOPEZ on August 1, 2022 to purchase at least two pounds of methamphetamine. Prior to this date, on July 22, 2022, the Honorable Allison Claire authorized a GPS phone locator search warrant for the Target Cell Phone. The phone locator information from AT&T for this telephone showed it primarily located in close proximity to 1947 Country Club Court, Marysville, California, LOPEZ's identified residence (Unit 4 in this complex), during the evening hours in late July 2022. The telephone locator information also showed it primarily at a new construction home development in Roseville, California most days which I believe coincided with LOPEZ informing me that he was running an electrical crew wiring new houses.

16. On August 1, 2022, the phone locator information for LOPEZ's telephone showed it travel from Marysville, California to the new home development in Roseville, California in the morning and then prior to 3:00 p.m. the telephone departed and returned to Marysville, California at which time agents conducting surveillance observed LOPEZ at his residence at 1947 Country Club Court, Unit 4, Marysville, California. At approximately 3:35 p.m., I telephonically contacted LOPEZ and indicated I would be able to come to Marysville by 5:00 p.m. to obtain the methamphetamine and LOPEZ told me he was prepared to obtain and deliver the methamphetamine and to call him just before I arrived.

17. At approximately 4:15 p.m., shortly after this call, SA James Bonanno observed LOPEZ depart his then-residence on Country Club Court in a maroon 2008 Chevrolet Truck, California License Plate #35052D2, which he drove east to a rural area. Aerial surveillance observed LOPEZ ultimately access a gate on a rural road and drive onto the property located on Sun Avenue at Yuba County Parcel #019-200-088, a 1.65 acre parcel which Yuba County property records revealed was listed as owned by Edgar GARCIA with the same listed residential address on Country Club Court. Property records did not list a corresponding numbered address for this parcel despite

5

it being located on the south end of Sun Avenue just prior to the east termination of the road.  This property had no residential structure but did have several parked vehicles and shed-like structures as well as apparent horses, chickens, etc.  LOPEZ was observed accessing some of the vehicles and storage structures by agents conducting aerial surveillance.  At approximately 4:34 p.m., I telephonically contacted LOPEZ and told him I was coming into Marysville and he told me to go to the O'Reilly Auto Parts Store in Linda where we had met in the past.  At approximately 4:45 p.m., agents observed LOPEZ depart the rural property in the same maroon Chevrolet truck and stop briefly at 1947 Country Club Court before travelling on to the O'Reilly Auto Parts Store where I was waiting for him.  LOPEZ entered my vehicle and provided me with three pounds (1,448 gg) of methamphetamine.  I told him I only had $4,400 and had only expected 2 ½ pounds of methamphetamine and he stated he would front me the additional half-pound and I could pay him an additional $850 at a later date.  LOPEZ also related that he could currently obtain the same blue fentanyl tablets he had previously sold me in the past if I was still interested.  Following this transaction, LOPEZ departed in the truck and agents observed him drive directly back to the rural property he owned at Yuba County Parcel #019-200-088.

18. On August 10, 2022, I arranged with LOPEZ to meet him in Roseville, California at which time the GPS phone locator information for his telephone showed it travel from the new home development directly to the Lowe's Home Store where I met him and gave him the agreed $850.  LOPEZ indicated he could lower the price significantly per pound if I purchased eight or more pounds.

19. During October 2022, I called LOPEZ on the Target Cell Phone, and during recorded calls we discussed an upcoming transaction for approximately five or more pounds of methamphetamine which LOPEZ indicated he would be prepared to deliver whenever I wanted.  LOPEZ assured me he would give me a better deal and lower the price per pound of methamphetamine.

20. The DEA Western Regional Laboratory (WRL) subsequently analyzed the item I purchased from LOPEZ on August 1, 2022 as being 1,338.9 grams of 100% pure methamphetamine.

21. I had no contact with LOPEZ until late April 2023, when we exchanged several drug-related calls and texts on the Target Cell Phone.  LOPEZ informed me on April 16, 2023 that he was still distributing methamphetamine and that he would give me a deal for $1,100 to $1,200 per pound if I purchased five to ten pounds at a time.  LOPEZ also informed me that he had access to powder fentanyl and would give me a price quote.  I told LOPEZ I would call him in a few weeks to arrange a transaction.

22. On May 8, 2023, the Honorable Deborah Barnes authorized a GPS phone locator warrant for the Target Cell Phone. The phone locator information for this telephone during May and June of 2023 showed that on most evenings, LOPEZ's telephone was at the property located on Sun Avenue (Yuba County Parcel #019-200-088) overnight. During this investigation, I learned that LOPEZ had purchased the property, and financial records revealed it was worth approximately $125,000 and had no liens. I noted that the telephone also showed it located alternately overnight and during the day at the residence located at 7381 Doc Adams Road, Marysville, California.

23. I subsequently learned through updated database inquiries that both LOPEZ and his wife Yesenia Ponce Garcia LOPEZ had begun self-providing a resident address of 3484 Sun Avenue, Marysville, California in the fall of 2022. Agents subsequently verified in May 2023 that Yuba County Parcel #019-200-088 on Sun Avenue had a placard in front of the gate with the numerals 3484 (although this number does not correspond to a legal address assigned to the property) and that there was a large travel trailer visibly parked on the property around which were several of LOPEZ's known vehicles that he had previously delivered drugs in.

24. I subsequently engaged in recorded calls with LOPEZ on the Target Cell Phone and arranged to purchase three pounds of methamphetamine from him on May 30, 2023. On the day of the buy, the phone locator information for the Target Cell Phone showed it located in Placer County during the day at construction sites. I called LOPEZ that afternoon and confirmed that I would be coming to Marysville to meet him at the same location and he indicated he would be ready around 5:00 p.m. The subsequent phone locator information showed the Target Cell Phone then travelled directly from Placer County to the property on Sun Avenue. Agents surveilling this location observed LOPEZ arrive in a black Nissan SUV, open the gate to the property and park near the travel trailer. At approximately the same time, I called LOPEZ and advised him that I was at the same O'Reilly Auto Parts Store waiting for him; agents observed LOPEZ talking on his phone at the exact time and he advised me he was about to come to my location. Following this telephone call, agents observed LOPEZ walk to a towable RV trailer which he entered before exiting while carrying a bag. Agents observed LOPEZ take the bag to the black Nissan SUV, depart and travel directly to my location at the O'Reilly Auto Parts Store. Once there, LOPEZ parked, exited his vehicle carrying the same bag he retrieved from the tow trailer, and then entered my vehicle. LOPEZ then opened the bag and gave me the three pounds of suspected methamphetamine and I paid him $3,600 cash. I told LOPEZ that I had money for another pound of methamphetamine, and he stated he would go obtain it and return shortly. Agents followed LOPEZ as he departed and travelled back to the

property on Sun Avenue. Agents observed him park and once again enter the same towable RV trailer and again exit with a bag which he carried to the black Nissan SUV. LOPEZ then drove directly to the O'Reilly Auto Parts Store where he carried the bag seen by agents into my vehicle and removed the additional pound of methamphetamine for which I paid him $1,200 cash. I told him I would contact him in the future to purchase ten to fifteen pounds of methamphetamine at a time; LOPEZ stated he would lower the price significantly per pound if I purchased those amounts. Following this transaction, agents followed LOPEZ directly back to the property on Sun Avenue where surveillance was terminated.

25. The DEA Western Regional Laboratory analyzed the substances I purchased from LOPEZ on May 30, 2023 as being 1,331.5 grams of methamphetamine and 441.5 grams of methamphetamine, respectively, for a total of 1,773 grams.

26. During August 2023, I telephonically contacted LOPEZ on the Target Cell Phone multiple times and advised him that I was interested in obtaining a large amount of methamphetamine (over ten pounds) during an upcoming transaction. LOPEZ stated he was prepared to supply whatever amount I needed.

27. On August 25, 2023, the Honorable Kendall J. Newman authorized search warrants for LOPEZ's property located on Sun Avenue (Yuba County Parcel #019-200-088), as well as for his person and cellular telephone.

28. On August 29, 2023, agents established surveillance of LOPEZ's property during the early morning hours. Agents observed LOPEZ departing the property in a vehicle at approximately 5:45 a.m.. A Yuba County Sheriff's marked unit thereafter conducted a traffic stop of LOPEZ's vehicle, and LOPEZ was detained by both Yuba County Sheriff and USMS deputies. Shortly after 6:00 a.m., agents approached and entered the property and subsequently contacted LOPEZ's wife, Yesenia GARCIA, and his minor children at the main travel trailer on the property. I subsequently spoke with LOPEZ in front of the property and identified myself, displayed a copy of the search warrant and provided a *Miranda* warning to LOPEZ. LOPEZ then acknowledged his rights and agreed to speak with me. LOPEZ admitted to having sold me multiple pounds of methamphetamine and multiple hundred fentanyl pills in the past. LOPEZ stated that he owned the property and that he, his wife and his children were the only occupants of the property and they had moved there recently intending to build a house. LOPEZ told me that there was approximately a pound of methamphetamine and a rifle in the cargo container next to the trailer and described to me where these items were located. I later found these items in the locations described by LOPEZ. LOPEZ admitted to travelling to Mexico to obtain methamphetamine. LOPEZ stated there were no other firearms or drugs on the property. However, during a continued

search of the cargo container, I located a large shopping bag filled with additional multiple pounds of suspected methamphetamine, digital scales and packaging material, two 9mm semi-automatic pistols (one of which was loaded), a .38 caliber revolver and a large amount of ammunition.  LOPEZ subsequently admitted to having possessed the additional methamphetamine and firearms.  The suspected methamphetamine was between 2,500 and 3,000 gg.  Based on my training and experience, and that of other experienced agents, the substance is consistent with methamphetamine seized in other investigations and later confirmed to be methamphetamine by a lab.

## CONCLUSION

29.  I request that based upon this Affidavit, a Criminal Complaint and Arrest Warrant be issued for **Edgar Enrique Garcia LOPEZ** charging him with possession with intent to distribute a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. 841(a)(1).

30. I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

/s/
_____
Brian Nehring, Special Agent
Drug Enforcement Administration


Sworn to and subscribed before
me telephonically the __29th__ day of August 2023.

_Carolyn K. Delaney_
_____
Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE


Approved as to form:

__/s/ Alstyn Bennett__
Alstyn Bennett
Assistant U.S. Attorney

<u>United States v. Edgar Enrique Garcia Lopez</u>
**Penalties for Criminal Complaint**

**<u>COUNT 1:</u>**

| | |
|---|---|
| VIOLATION: | 21 U.S.C. § 841(a)(1) – Possession with Intent to Distribute over 500 Grams of a Mixture and Substance Containing a Detectable Amount of Methamphetamine |
| PENALTIES: | Mandatory minimum of 10 years in prison and a maximum of up to life in prison; or<br>Fine of up to $10,000,000; or both fine and imprisonment<br>Supervised release of at least 5 years up to life |
| SPECIAL ASSESSMENT: | $100 (mandatory on each count) |

**<u>COUNT 2:</u>**

| | |
|---|---|
| VIOLATION: | 21 U.S.C. §§ 846, 841(a)(1) – Possession with Intent to Distribute over 40 Grams of Fentanyl |
| PENALTIES: | Mandatory minimum of 5 years in prison and a maximum of up to 40 years in prison; or<br>Fine of up to $5,000,000; or both fine and imprisonment<br>Supervised release of at least 4 years up to life |
| SPECIAL ASSESSMENT: | $100 (mandatory on each count) |

**<u>FORFEITURE ALLEGATION:</u>**

| | |
|---|---|
| VIOLATION: | 21 U.S.C. § 853(a) – Criminal Forfeiture |
| PENALTIES: | As stated in the charging document |